UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>**CORFU 77, CORP.**<br><br>Debtor. | Chapter 11<br><br>Case No. 20-11460 (MEW) |

**DECISION DENYING DEBTOR'S MOTION FOR A STAY, PENDING
APPEAL, OF THIS COURT'S ORDER ENTERED JANUARY 28, 2021**

Before me is the motion (the "Stay Motion") of CORFU 77, CORP (the "Debtor"), pursuant to Fed. R. Bankr. P. 8007, for a stay pending an appeal from an Order entered by this Court on January 28, 2021 that denied the Debtor's motion to vacate a prior order dated December 22, 2020 or, in the alternative, to extend the deadline by which the Debtor must vacate its premises. The Debtor filed the Stay Motion on February 2, 2021 and I heard argument on the afternoon of February 3, 2021. I informed the parties that I would deny the motion for a stay and that we would issue this written decision as quickly as possible so that it would be available to the District Court in the event the Debtor sought to renew its stay application in that court.

**Background**

On June 23, 2020, the Debtor filed a chapter 11 petition for reorganization. The Debtor operates a food establishment in Bronx, New York out of premises it occupies under a commercial sub-lease with TD Bank, N.A. ("TD Bank") dated February 26, 2018. According to TD Bank's proof of claim, the Debtor owed $48,498.20 in rent arrears as of the date of its bankruptcy filing. The Debtor's post-petition obligations under the sub-lease include monthly rent of $4,291.67 and real estate taxes.

Section 365 of the Bankruptcy Code permits a trustee to assume an unexpired lease, and in a chapter 11 case that power may be exercised by the debtor-in-possession. *See* 11 U.S.C. §§

365, 1107(a). The assumption of a lease requires a prompt cure of prior defaults (including pre-bankruptcy defaults) and adequate assurance that the Debtor will be able to comply with its obligations going forward. *See* 11 U.S.C. § 365(b)(1). In addition, section 365(d)(4)(A)(i) of the Bankruptcy Code provides that an unexpired lease of nonresidential real property is deemed rejected, and the property shall immediately be surrendered, if the trustee does not assume or reject the lease within 120 days after the petition date. The 120-day period set forth in section 365(d)(4) may be extended by the Court for an additional 90 days under section 365(d)(4)(B), but no application for such an extension was made in this case. In addition, extensions beyond that additional 90 days can only be granted with the consent of the lessor.

The Debtor consistently failed to make timely payments of monthly rent after filing its chapter 11 petition, notwithstanding its obligations to "timely perform" all post-petition obligations under the sub-lease. *See* 11 U.S.C. § 365(d)(3). On September 9, 2020, TD Bank filed a motion seeking an order granting relief from the automatic stay for the purpose of terminating the sub-lease and recovering possession of the premises, and/or deeming the sub-lease to have been rejected. The motion was deferred when the Debtor made belated post-petition rent payments, but issues continued to arise in October, November and December 2020 due to the Debtor's persistent lateness in making rent payments and issues as to its compliance with insurance and other obligations under the sub-lease.

On October 20, 2020, the day before the date on which the sub-lease would have been deemed rejected under section 365(d)(4) of the Bankruptcy Code, the Debtor filed a motion to assume the sub-lease. The Debtor proposed to "cure" outstanding payment defaults by making monthly payments (in addition to rent) of $4,041.52 per month until the overdue sums were paid. TD Bank opposed the motion to assume, arguing (among other things) that the Debtor could not

2

provide adequate assurance of its ability to make the proposed cure payments or of its ability to make future rent payments in light of the Debtor's dim prospects for the success of its business, the Debtor's noncompliance with orders I had entered leading up to the resolution of the sub-lease rejection motion, and the Debtor's general delinquency in performing its obligations as a debtor-in-possession.

I scheduled an evidentiary hearing on the motion to assume for December 2, 2020.  On the eve of that hearing, the parties announced that they had reached a consensual resolution to the motion, the terms of which were memorialized in a proposed stipulation and order (the "Settlement Stipulation") scheduled to be presented to me on December 15, 2020 pursuant to Local Bankruptcy Rule 9074-1.  *See* ECF No. 34.  The proposed stipulation included the following terms, among others:

- The Debtor was to cure its pre-petition and post-petition rent defaults by making payments to TD Bank of $20,000 on December 9, 2020 and $34,663.74 on December 16, 2020.

- The Debtor was to make timely ongoing rent payments under the sub-lease starting on January 1, 2021 and the first day of each month thereafter.

- The Debtor was to comply with other obligations regarding insurance, a certificate of occupancy and related matters.

- Paragraph 12 of the proposed stipulation stated that if the debtor defaulted in any way, the Debtor waived all objections to the entry of an order deeming the sub-lease to be rejected (other than an objection alleging TD Bank's timely receipt of payments).

3

The Settlement Stipulation was subject to the Court's approval under Rule 9019 of the Federal Rules of Bankruptcy Procedure. After the Settlement Stipulation had been submitted and the objection period had expired, but before the entry of any order by the Court, the Court was informed that the Debtor had failed to make the payment that was to be made by December 16, 2020. TD Bank promptly asked me to approve the Settlement Stipulation and simultaneously to declare the Debtor in breach of that Stipulation. I scheduled a telephonic hearing for December 18, 2020 to consider the matter.

During the hearing on December 18, the Debtor's counsel attributed the failure to make the $34,663.74 payment to the fact that the Debtor's principal, Socrates Sellas, had concerns following a December 11, 2020 announcement by the Governor of New York that indoor dining would be suspended due to the COVID-19 pandemic. Regardless of the reason, the Debtor's failure to comply with the terms of the Settlement Stipulation meant that the stipulation was no longer in effect. It made no sense to approve a Settlement Stipulation that had already been breached and that by its terms would simply result in an immediate termination of the sub-lease, and doing so would have been prejudicial to the Debtor's other creditors, since the assumption of the sub-lease would have transformed TD Bank's claim for unpaid pre-petition rent into an administrative expense rather than a general unsecured claim. I therefore denied approval of the Settlement Stipulation. In addition, the Debtor had consistently defaulted in the timely performance of its obligations; it had defaulted under the terms of the proposed Settlement Stipulation; and it could not (or at least did not) offer adequate assurance of its ability to cure defaults, to make sub-lease payments going forward, and to protect the lessor's interests. I therefore denied the Debtor's motion to assume the sub-lease, granted TD Bank's motion to deem the sub-lease rejected, and requested that the parties submit a consensual form of order.

As noted above, section 365(d)(4) provides that a debtor must "immediately surrender" property that is the subject of a rejected lease. Notwithstanding this requirement TD Bank voluntarily agreed (in the consensual form of order that the parties submitted) that the Debtor could remain in possession of the premises until February 1, 2021. I entered the agreed form of order (the "Lease Rejection Order") on December 22, 2020. The Lease Rejection Order became final on January 5, 2021, after the Debtor failed to file a notice of appeal during the 14-day appeal period set forth in Fed. R. Bankr. P. 8002(a).

On January 20, 2021, the Debtor filed a motion for an order "vacating the denial" of the Settlement Stipulation or, in the alternative, extending the deadline for the Debtor's surrender of the premises by an additional ninety days (the "Motion to Vacate").[1] I held a telephonic hearing on January 27, 2021 to consider this motion. I noted at the January 27 hearing that my December 22, 2020 Lease Rejection Order was final and that no timely appeal or timely motion to amend the Order had been filed. I further noted that no legally sufficient basis had been offered in support of the Motion to Vacate. The motion invoked Fed. R. Civ. P. 60(b) (made applicable to bankruptcy cases by Fed. R. Bankr. P. 9024), but did not indicate which sub-division of Rule 60(b) purportedly warranted relief. At argument counsel invoked Rule 60(b)(6), arguing that the Governor's December 11, 2020 announcement gave the Debtor justifiable pause and that Mr. Sellas thought that the Debtor would be able to obtain additional extensions of the cure payment deadline. However, no such arguments had been made in December 2020 (when

---

[1] Although the title of the Motion to Vacate stated that it sought a "Sixty-Day Extension of the Deadline to Surrender Premises," the body of the motion requested a ninety-day extension, from February 1, 2021 to May 1, 2021.

5

the default occurred). I noted that the only thing that seemed to have happened is that the Debtor had had a change of heart, which is not a sufficient reason to undo the prior order.

I also noted that I had no authority to grant an extension of the February 1, 2021 surrender deadline. Section 365(d)(4) plainly requires an "immediate" surrender of property following a lease rejection. TD Bank allowed additional time to February 1 despite its right to demand the Debtor's immediate surrender of the premises, but I had no power to impose additional extensions of time over TD Bank's objection. I therefore denied the Motion to Vacate and on the following day, I entered an order (the "Vacatur Denial Order") to that effect that additionally reaffirmed the Debtor's obligation to surrender the premises by February 1, 2021 pursuant the Lease Rejection Order.

## The Motion for a Stay Pending Appeal

In response, on February 2, 2021, the Debtor filed a notice of appeal of the Vacatur Denial Order. The Debtor also filed the Stay Motion, which was properly presented to me in the first instance pursuant to the terms of Fed. R. Bankr. P. 8007(a). I scheduled a telephonic hearing on shortened notice for February 3, 2021. After hearing argument I stated that I would deny the motion for a stay, and that I would issue this decision so that the District Court would have the benefit of our thinking in the event the motion were to be renewed in the District Court.

I note at the outset that the proposed "stay" of my January 28, 2021 order would not appear actually to accomplish anything. It was my December 22, 2020 Lease Rejection Order that deemed the sub-lease to be rejected. If my January 28, 2021 order were to be stayed, the December 22, 2020 Lease Rejection Order (and its February 1, 2021 surrender deadline) would still be in place.

At argument today the Debtor's counsel stated that what the Debtor really wants is a "stay" of the "enforcement" of the February 1, 2021 surrender deadline. The problem, however,

6

is that the proposed "stay of enforcement" is really just a disguised request for a court-ordered extension of the surrender deadline, which is the form of relief that I already denied. No argument has been made that the deadline is unenforceable, or that TD Bank would be acting wrongfully in the event it chooses to enforce the deadline. The Debtor just wants me to change what the parties previously agreed and to impose an additional obligation over TD Bank's objection. The "immediate surrender" of the premises is what section 365(d)(4) requires, and I have no power to order a different timetable over TD Bank's objection.

The Debtor's counsel argued today that TD Bank would be hard-pressed to obtain an eviction in the state court because of the local courts' restrictions on evictions during the pandemic, and that I should find a way to achieve the same result here. But this is not a situation in which eviction or surrender is an equitable remedy to be ordered at my discretion and upon such terms as I might wish. Instead, the "immediate surrender" of the property is what the statute commands. TD Bank already provided the Debtor with an additional six weeks, and there is nothing in section 365 of the Bankruptcy Code that permits me to impose a longer period of continued use.

The Debtor's counsel also argued today that I should invoke powers under section 105(a) of the Bankruptcy Code, which permits me to enter orders that are necessary or appropriate to "carry out" the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a). But my power to "carry out" provisions of the Bankruptcy Code does not give me the power to negate the terms of the statute or to overrule the "immediate surrender" of property that the statute commands. *Law v. Siegel*, 134 S. Ct. 1188, 1194, 571 U.S. 415, 421 (U.S. 2014).

I also do not believe that the Debtor has satisfied the requirements for a stay pending appeal. In determining whether a party is entitled to a stay pending appeal, the court considers

7

the likelihood of irreparable injury to the movant, the potential harm to other parties, the substantial possibility of success on appeal, and how the stay would weigh on the public interest. *In re Sabine Oil & Gas Corporation*, 548 B.R. 674, 681–84 (Bankr. S.D.N.Y. 2016). I find that the Debtor has not demonstrated a likelihood of success or the presence of serious issues going to the merits. The Lease Rejection Order is final and the Debtor's change of heart is not proper grounds to reopen it, and the previously-agreed February 1 surrender deadline is not subject to extension by the Court for the reasons stated above. Additionally, any appeal seeking the approval of the Settlement Stipulation would be mooted by the fact that TD Bank would be remain entitled under the terms of the stipulation to seek entry of a lease rejection order, and the Debtor has already admitted facts (i.e., its failure to timely remit cure payments) that would defeat its only defense against the entry of such an order.

The Debtor would benefit if the surrender date were delayed, but that is different from saying that the Debtor faces "irreparable harm" if the agreed-upon deadline is enforced. During argument today the Debtor's counsel acknowledged that the Debtor cannot cure the defaults under the sub-lease and cannot assume it. What the Debtor really wants is time to continue operating while it finds a new location. But the Debtor does not face "irreparable harm" of a legally-cognizable nature merely from the fact that the Debtor cannot continue to use property that the Debtor has no legal or equitable or statutory right to use.

In addition, the balance of hardships do not favor the Debtor. The Debtor has been in default for a very long time and does not contend that it realistically could cure its defaults. TD Bank is at risk if the Debtor continues to use its property. There is not even any sufficient assurance that the Debtor could make timely rent payments going forward – something the Debtor frequently has failed to do in the past.

I do not believe that the public interest weighs either in favor of the motion or against it.

I have sympathy for the Debtor and for all business that are adversely affected by the pandemic or by other business reversals.  But my sympathy does not give me the right to compel TD Bank to makes its property available for use by the Debtor, or to ignore the statutory command of an "immediate" surrender of the premises following a rejection.  I find upon consideration of all the relevant factors that the motion should be denied.

DATED:    New York, New York
          February 3, 2021

                                        s/Michael E. Wiles
                                        HONORABLE MICHAEL E. WILES
                                        UNITED STATES BANKRUPTCY JUDGE